JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant Ricky Palmer appeals his convictions for one count of burglary and one count of aggravated theft.[1] He sets forth the following four errors for our review:
 "I. Ricky Palmer has been deprived of his liberty without due process of law by his conviction for burglary and felony theft as neither crime was supported by sufficient evidence to prove all of the essential elements beyond a reasonable doubt."
 "II. Ricky Palmer was deprived of his constitutional right to a fair trial before an unbiased fact finder by the introduction of improper other acts evidence in the state's case in chief."
 "III. Ricky Palmer was deprived of his constitutional right to confront the witness against him by the introduction of hearsay evidence."
 "IV. Ricky Palmer was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to preserve issues for appeal."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Palmer's convictions. The apposite facts follow.
 Jury Trial {¶ 3} George Todorovich lived next door to his brother, Jason, who lived at 4882 East 81st Street in Garfield Heights, Ohio. At approximately 8:15 a.m. on November 16, 2006, he heard loud noises coming from his brother's house. He looked out the window and saw two men kicking in the back door. He grabbed his *Page 3 
cell phone and went outside while he called the police. He saw the two men run from his brother's home carrying his brother's gun case and a fire box. The men jumped into a silver Grand Prix that was parked in front of the home. As they drove off, George attempted to rip the license plate off the car while he relayed the plate number to the dispatcher.
 {¶ 4} The police arrived shortly after the men left the scene. A chase ensued. The police located the Grand Prix in the parking lot of an apartment complex a few blocks away. The doors were open and in the back seat was a gun case and a fire box. Witnesses in the parking lot told the police they saw an African-American male in a red shirt jump the fence and run into the woods. This description matched one of the suspects. Officers located Palmer hiding in the woods. He was brought back to the scene of the crime, where George Todorovich positively identified him as one of the men who entered his brother's home and as the driver of the get-away car.
 {¶ 5} A black coat was found in the laundry room of the apartment building. In the jacket's pocket, the police found a hand gun and collector's coins. A cell phone was also recovered from the Grand Prix. The caller identification revealed that a "Cat" had attempted to call the telephone. Later, at the police station, a Catherine Fleegle called. She informed Detective Beigacki that she had attempted to call Palmer because he had her car. The officer asked her if her name appeared as "Cat" on Palmer's cell phone, to which she responded, "yes." *Page 4 
 {¶ 6} Jason Todorovich testified that he never met Ricky Palmer; however, his girlfriend worked with and was friends with Palmer's girlfriend. He testified that his gun case, containing a registered nine millimeter hand gun, was stolen, along with a fire box, containing his coin collection and his girlfriend's checks. He estimated the total value of the items taken was over $500.
 {¶ 7} The jury found Palmer guilty of one count of burglary and two counts of aggravated theft. The trial court sentenced Palmer to a total of ten years in prison.
 Insufficient Evidence {¶ 8} In his first assigned error, Palmer argues that his burglary and theft convictions are not supported by sufficient evidence.
 {¶ 9} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[2] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3] *Page 5 
 {¶ 10} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[4] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [(1979)], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 11} Regarding his second-degree burglary conviction, Palmer contends the state failed to produce evidence to prove, beyond a reasonable doubt, that a person was "present or likely to be present" when he trespassed in Jason Todorovich's home.
 {¶ 12} R.C. 2911.12(A)(2), provides in pertinent part:
 "No person, by force, stealth, or deception, shall * * * :
 "* * * *Page 6 
 "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is the permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * * ."
 {¶ 13} "A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present."[5] In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely."[6] Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary.[7]
 {¶ 14} We are aware of the case law that concludes that when the burglary occurs while the inhabitants are at work, and there is evidence of a consistent work pattern, there is a minimal likelihood someone would be present in the home.[8] *Page 7 
However, in the instant case, although the burglary occurred while the inhabitants were at work, the break-in occurred close to the time of their departure; thus, there was a likelihood that the inhabitants could have been at home during that time. Therefore, we conclude there was sufficient evidence presented that the break-in occurred while someone other then the offender was "likely to be present."
 {¶ 15} In regards to his theft conviction, Palmer contends there was no evidence that the stolen items exceeded the value of $500. He argues that although Jason Todorovich testified the total value of the items stolen was over $500, Palmer was only indicted for stealing the coin collection and gun case, not the fire box or gun. The indictment does delineate the theft felony Palmer allegedly committed and sets forth the "value of said property or services being $500 or more but less than $5,000."
 {¶ 16} An indictment need not be in the exact language of the statute defining the offense so long as all the essential elements of the crime are contained in language equivalent to that used in the statute and the accused is advised in the indictment of the nature and cause of the accusation he is expected to meet.[9] The indictment meets this notice requirement. *Page 8 
 {¶ 17} Although the indictment fails to list all the items Palmer stole, the state is under no duty to list the items defendant supposedly stole in connection with the theft.[10] If Palmer was unsure of the items for which he was being charged for stealing, he could have filed a bill of particulars to obtain more specifics on the nature of the offense.[11] Todorovich testified that the total value of the items stolen exceeded $500. Therefore, there was sufficient evidence presented to support the theft conviction. Accordingly, Palmer's first assigned error is overruled.
 Evidence of Other Acts {¶ 18} In his second assigned error, Palmer argues the trial court erred in failing to declare a mistrial after Jason Todorovich stated that Palmer was "notorious for doing this." We disagree.
 {¶ 19} The standard of review for evaluating a trial judge's decision to grant or deny a motion for a mistrial is abuse of discretion.[12]
An "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable.[13] *Page 9 
 {¶ 20} A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court.[14] The granting of a mistrial is only necessary when a fair trial is no longer possible.[15] Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected.
 {¶ 21} In the instant case, Palmer argues that Jason Todorovich improperly tainted the jury when he stated Palmer was "notorious for doing this."[16] Todorovich stated this in response to defense counsel's question, "You knew of him?" in reference to Palmer. Defense counsel objected to Todorovich's answer, and the trial court instructed the jury as follows: "Jurors disregard the last comment. Go ahead." Defense counsel then requested a side bar to request a mistrial, which the court denied. When defense counsel continued questioning, he was the one who brought it up again. He stated:
 "So this comment you just threw in for the hell of it, the Court has asked the jury to disregard, you have no basis for that opinion other than what other people might have said to you, correct?"[17] *Page 10 
 {¶ 22} The court reacted by stating:
 "Wait a minute now. Let's drop the subject. Ladies and gentlemen, the jury will disregard his comment about whatever hearsay information, good or bad or indifferent, that he received about the man's past. The man's past, good or bad, isn't relevant to the case. Doesn't matter to a jury whether somebody has been in the seminary his whole life or the opposite end of the spectrum. It matters if the State has the evidence to prove that the defendant violated the State statute on the day in question. Not any other day, just the day in question."[18]
 {¶ 23} A jury is presumed to follow instructions, including curative instructions, given to it by a trial judge.[19] Moreover, it can be argued that defense counsel was the one that exacerbated the situation by continuing to comment on the statement. Additionally, given the evidence linking Palmer to the crime and George Todorovich's reliable and confident identification of him as one of the men he saw breaking into his brother's home, we find any error was not prejudicial. Accordingly, Palmer's second assigned error is overruled.
 Hearsay {¶ 24} In his third assigned error, Palmer argues that the trial court improperly allowed hearsay testimony when it permitted a detective to testify that Catherine Fleegle called him and told him that Palmer had her car and that she had tried to call *Page 11 
Palmer on his cell phone. The detective also stated that Fleegle admitted her name appeared as "Cat'on Palmer's cell phone caller identification, providing the detective with evidence that the cell phone found in the car belonged to Palmer.
 {¶ 25} We note that counsel failed to object to the detective's testimony. Thus, we review this error under the plain error doctrine. Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions.[20] We conclude plain error did not occur.
 {¶ 26} The detective's statements did not constitute hearsay. The statements were not admitted to prove the truth of the matter asserted, but to prove Palmer's link to the get-away car. Moreover, defense counsel opened the door to this line of questioning when on cross-examination he accused the detective of assuming the cell phone found in the car was Palmer's. On redirect, the state asked Palmer to explain how he knew the cell phone was Palmer's and the detective responded by detailing his conversation with Ms. Fleegle. Therefore, the hearsay was not used to prove the truth of the matter, i.e. that Palmer was using Fleegle's car or that her name appeared as "Cat" on the caller ID. Instead, it was used to prove that the phone was Palmer's. Because the statements were not hearsay, Palmer's right to *Page 12 
confrontation was not implicated; therefore, Crawford v.Washington[21] does not apply.[22]
 {¶ 27} Even if the statements were deemed to be hearsay, they were not prejudicial. George Todorovich had positively identified Palmer as the man he observed break into his brother's house and who he saw getting into the driver's side of the Grand Prix. Therefore, given the overwhelming evidence against Palmer, we conclude the statement, even if hearsay, did not influence the jury. Accordingly, Palmer's third assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 28} In his fourth assigned error, Palmer argues his counsel was ineffective for failing to object to the detective's hearsay testimony. We disagree.
 {¶ 29} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington[23] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[24] *Page 13 
To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[25] Judicial scrutiny of a lawyer's performance must be highly deferential.[26]
 {¶ 30} We already addressed Palmer's argument regarding the hearsay and have determined counsel's failure to object to the hearsay did not result in prejudicial error. Therefore, Palmer has not shown but for his attorney's error, the result of the proceedings would have been different. Accordingly, Palmer's fourth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., CONCURS;
CHRISTINE T. McMONAGLE, P.J., DISSENTS
(SEE ATTACHED DISSENTING OPINION.)
[1] Palmer was also convicted for aggravated theft arising out of his theft of a weapon. However, he does not appeal that conviction.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] State v. Green (1984), 18 Ohio App.3d 69, 72.
[6] State v. Brown (Apr. 28, 2000), Hamilton App. No. C-980907.
[7] State v. Fowler (1983), 4 Ohio St.3d 16, 18.
[8] State v. Meisenhelder (Oct. 12, 2000), Cuyahoga App. No. 76764;State v. Lockhart (1996), 115 Ohio App.3d 370; State v. Colon (Dec. 17, 1992), Cuyahoga App. No. 61253; State v. Johnson (Oct. 10, 1991), Cuyahoga App. No. 59096; State v. Durham (1976),49 Ohio App.2d 231.
[9] State v. Oliver (1972), 32 Ohio St.2d 109; State v. Reyna (1985),24 Ohio App.3d 79.
[10] State v. Smith (Mar. 12, 1998), Cuyahoga App. No. 72027; R.C. 2941.08; Crim. R. 7(B).
[11] Crim. R. 7(B).
[12] State v. Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168; State v.Glover (1988), 35 Ohio St.3d 18; City of Cleveland v. Gonzalez, Cuyahoga App. No. 85070, 2005-Ohio-4413.
[13] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[14] State v. Reynolds (1988), 49 Ohio App.3d 27, 33, 55.
[15] State v. Franklin (1991), 62 Ohio St.3d 118, 127, citingIllinois v. Somerville (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066,35 L.Ed.2d 425.
[16] Tr. at 204.
[17] Tr. at 207.
[18] Tr. at 208.
[19] State v. Elko, Cuyahoga App. No. 83641, 2004-Ohio-5209. See, also, State v. Hardwick, Cuyahoga App. No. 79701, 2002-Ohio-496.
[20] State v. Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100.
[21] (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.
[22] State v. Smith, Jr., 162 Ohio App.3d 208, 2005-Ohio-35.
[23] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[24] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[25] Id. at paragraph two of syllabus.
[26] State v. Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-343. *Page 14