[Cite as *State v. Stewart*, 2018-Ohio-3517.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1107

     Appellee                                    Trial Court No. CR0201603360

v.

Marcus Stewart                                  **DECISION AND JUDGMENT**

     Appellant                                  Decided:  August 31, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Stephen D. Long, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Marcus Stewart, appeals the April 18, 2017 judgment of the

Lucas County Court of Common Pleas, where he was sentenced to two years of

incarceration, after he was found guilty of burglary.  For the reasons which follow, we

affirm.

**Assignments of Error**

{¶ 2} Appellant sets forth the following assignments of error:

1. The trial court erred in allowing the victim to testify as to statements purportedly told to her by her neighbors, over the objection of appellant.

2. Appellant was denied the effective assistance of counsel where counsel open [sic] the door for the admission of hearsay testimony and waived appellant's right to confront witness against him.

3. The trial court erred in denying appellant's motion for acquittal and renewed motion for acquittal and the verdict was not supported by sufficient evidence.

4. The verdict was against the manifest weight of the evidence.

**Background**

{¶ 3} The victim's home was burglarized on the afternoon of December 19, 2016. Items which were stolen from the victim's home included a flat screen television, videogame consoles, controllers and games. Shortly after the burglary, and in close proximity to the victim's home, appellant was found in possession of the flat screen television.

{¶ 4} On December 28, 2016, appellant was indicted for burglary, in violation of R.C. 2911.12(A)(2) and (D). He entered a plea of not guilty to the charge.

{¶ 5} The case went to trial on April 17, 2018. Toledo Police Department ("TPD") Officer David Donovan testified that on the day of the burglary, he was flagged down by a frantic individual and informed that a male was walking down the alley carrying a large television. The concerned citizen said the man was wearing a blue and white baseball jacket. Officer Donovan alerted nearby units of the suspicious activity, gave a description of the suspect, and proceeded to search for the subject. The officer noted "[t]hat time of the year was very, very thick with snow, and they don't plow alleys."

{¶ 6} TPD Officer Michael Garcia testified he spotted a male in the alley wearing a blue baseball style coat. Officer Garcia was unable to turn into the alley immediately, but when he entered the alley from the opposite side, "[he] saw a gray car facing towards [him], and the truck closes, and we see a male, the male that had [a] blue baseball style coat standing at the truck." Officer Garcia pulled his vehicle next to the gray car and asked the occupants of the gray car what they were doing. Appellant answered he was getting a ride. Appellant entered the backseat of the car, and the car drove off. Officer Garcia's vehicle got stuck in the snow so he relayed a description of the gray car and its direction of travel to Officer Donovan's unit. In court, Officer Garcia identified appellant as the man he saw that day.

{¶ 7} Officer Donovan located the gray car and stopped it approximately 50 feet away from the alley. The officer noted the man in the backseat of the car was wearing the same clothes described by the concerned citizen, and the man was making "very

3.

frantic furtive movements." When Officer Donovan opened the back door of the car "there were controllers from Play Stations being removed from his person and shoved under seats." At trial, Officer Donovan identified appellant as the man he saw wearing the blue and white baseball jacket that day.

{¶ 8} The three individuals in the gray car were questioned, and permission was granted to search the car. A gun was discovered on the floorboard so the three men were detained. The victim's large, black flat screen television was recovered from the car's trunk.

{¶ 9} Meanwhile, Officer Garcia started walking properties to see if any house was broken into. The sergeant he was with told him a neighbor "a couple houses down" saw a male carrying a television. The sergeant then located a house with pry marks on the rear door frame, with the door ajar. Officer Garcia and the sergeant searched the home and determined no one was there. The victim then arrived home.

{¶ 10} TPD Officer Denise Fischer testified she was Officer Garcia's partner on December 19, 2016, when she heard on the radio the description of a black male wearing a blue jacket that had a sports team on it carrying a television in an alley. Within a very short time, the officer saw a black male standing in the alley with a sports jacket with blue sleeves. The man did not have a television, but he was standing in the alley looking around. Officer Fischer testified to the same events which occurred in the alley as Officer Garcia. When the traffic stop of the gray car occurred, Officer Fischer assisted. She helped to search the car and located a television in the trunk.

4.

**{¶ 11}** Appellant was placed in the back of Officer Fischer's patrol vehicle. Appellant initially provided a false name. While in the patrol vehicle, appellant threw a bag of marijuana through the screen guard between the seats.

**{¶ 12}** Officer Fischer brought the television to the victim's home and the victim identified it as her television. Officer Fischer estimated the victim's home was within a house or two of the alley where she first saw appellant. In court, Officer Fischer identified appellant as the man he saw that day.

**{¶ 13}** TPD Detective Greg Mattmore testified he interviewed appellant, and appellant said he was walking when a guy walked up to him and offered him the television for $40. Appellant did not have $40, so he gave the guy $20 and a bag of weed and the guy gave appellant the television. Appellant said he was homeless and needed money to survive. Appellant adamantly told the detective that the two men who were in the car with him had nothing to do with the television.

**{¶ 14}** The victim testified she did not know appellant and did not give him permission to be in her home or take her television. On December 19, 2016, the victim left her home at about 3:15 p.m., briefly stopped back home to pick up a form, made sure her home was securely locked, went to the doctor's office and a restaurant, then returned home at about 4:30 to 5:00 p.m. at the latest. When she arrived home, the police were there. The victim looked around her house and noticed her door was damaged and a screen was broken on the dining room window, neither of which was in that condition when she left home. The victim discovered there were several items missing from her

5.

home, including her television.  The victim also observed, outside of her house, that there was a bucket turned upside-down underneath her dining room window, and there were footprints in the snow around the bucket.

{¶ 15} The victim testified she spoke with a neighbor who knew appellant, and the neighbor saw appellant leaving the victim's front porch.  The victim further testified another neighbor saw appellant knocking on the side door of the victim's home, and trying to open the door.

{¶ 16} On April 18, 2018, the jury found appellant guilty of burglary.  The court sentenced appellant to two years of incarceration.  The judgment was journalized April 27, 2018, and appellant timely appealed.

## Analysis

### First Assignment of Error

{¶ 17} Appellant argues the trial court erred in allowing the victim to testify about her neighbors' accounts of events after appellant objected, as this constituted inadmissible hearsay.  Appellant takes issue with two instances of testimony.

{¶ 18} The first instance involved the prosecution's questioning of what the victim's neighbor told the victim.  The victim testified, "I went to them and they were upset because they said that they knew the kid," referring to appellant.  The victim continued, "the neighbor said that they drove up and seen him coming off my front porch."  Appellant's counsel objected to this testimony, but the trial court overruled the objection.

6.

{¶ 19} The second instance occurred during cross-examination of the victim. Appellant's attorney asked the victim, "according to your neighbor [appellant] was on your front porch, but not in the back or at the bucket, correct?" The victim responded she was not able "to speak on he said[,] she said," but then added that "the neighbor across the street said he seen him knocking and trying to open up the side door." This testimony referenced a different neighbor. Appellant's counsel did not object to this testimony.

{¶ 20} The state maintains the present sense impression exception applies to the neighbor's hearsay statement because, at the time the statement was made, the neighbor was upset after observing appellant leave the porch of the victim's residence. According to the state, the emotional upset would indicate and permit a reasonable inference that the neighbor's statement was made either contemporaneously with the burglary or very soon thereafter, thus the statement was trustworthy and admissible.

{¶ 21} Under Evid.R. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. Exceptions to hearsay are enumerated in Evid.R. 803.

{¶ 22} Evid.R. 803(1) states the present sense impression is "a statement describing or explaining an event or condition made while the declarant was perceiving

the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." A present sense impression does not need to be made while under the influence of emotion or trauma. 2016 Staff Note, Evid.R. 803(1).

{¶ 23} The principle underlying the present sense impression exception "'is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness.'" (Citation omitted.) *Abraham v. Werner Enters.*, 6th Dist. Erie No. E-02-013, 2003-Ohio-3091, ¶ 26. "'By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived.'" *Id.* However, the present sense impression exception does not apply in a situation when the period of time that elapsed between the event in question and the statement sought to be admitted is not known or is not clear. *State v. Carter*, 3d Dist. Seneca No. 13-17-10, 2017-Ohio-7443, ¶ 13-14.

{¶ 24} Here, it is undisputed that the victim's testimony regarding what the neighbors told her is hearsay. Upon review, appellant's counsel objected to the first instance of hearsay, but did not object to the second instance. Accordingly, appellant's challenge to the first instance of hearsay is subject to de novo review under the applicable hearsay rule. *See State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 32 (6th Dist.). We review appellant's challenge to the second instance of

8.

hearsay using the plain error standard. *See State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 73; *State v. Scott*, 10th Dist. No. 05AP-1144, 2006-Ohio-4981, ¶ 21.

### Standards

{¶ 25} Applying the de novo standard of review, "'errors relating to the trial court's admission of hearsay must be reviewed in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right.'" (Citation omitted.) *Richcreek* at ¶ 32. *See also In re Dor B.*, 6th Dist. Wood No. WD-18-013, 2018-Ohio-2666, ¶ 60. "[A]n error may be harmless if the state's case against the accused is overwhelming." *State v. Ferguson*, 5 Ohio St.3d 160, 166, 450 N.E.2d 265 (1983), fn. 5. "[T]he cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *Id.*

{¶ 26} Plain error is an obvious defect in the trial proceeding which affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Plain error does not exist unless it can be shown that but for the error, the outcome at trial "'clearly would have been otherwise.'" (Citation omitted.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.

9.

**First and Second Instances of Hearsay**

{¶ 27} Our review of the record reveals that when the victim arrived home on the afternoon of December 19, 2016, police were at her home conducting an investigation of a burglary which had occurred while the victim was away. The police informed the victim of the burglary. At some point, the victim spoke with neighbors and learned the information concerning appellant, about which she testified at trial. There is no indication in the record when the victim spoke with the neighbors. As such, the present sense impression exception does not apply. *See Carter, supra.* We therefore find the hearsay statements are not admissible under Evid.R. 803(1), and the trial court erred in admitting the hearsay statements.

{¶ 28} Nevertheless, any error caused by the admission of the first instance of hearsay was harmless in light of the overwhelming evidence of appellant's guilt. The state presented evidence, including the testimony of police officers and the crime victim that: appellant was in a snow-covered alley within a house or two of the victim's home carrying a large, flat screen television during the time the victim was not home; appellant was seen standing by a car's trunk where the victim's television was later found; when stopped by police, appellant made furtive movements and gave a false name; appellant was unknown to the victim; there was damage to the door frame and window screen of the victim's home and the door was open; appellant was apprehended within two hours of the burglary; appellant was homeless; appellant told police he bought the television from some guy walking down the street for $20 and a bag of weed; and, appellant was adamant

10.

when he told police the two men in the car with him had nothing to do with the television.

{¶ 29} As to the second instance of hearsay, appellant has not demonstrated that the result of his trial would have been different absent this statement.  The record shows the jury had sufficient, credible evidence to support its decision to convict appellant such that this inadmissible evidence did not undermine the jury's verdict.  Thus, based on properly admitted evidence, as set forth above, and disregarding the victim's testimony relating to what the neighbors said to her, we find the jury could conclude appellant committed the burglary.  Accordingly, the admission of the second instance of hearsay did not rise to the level of plain error.  Appellant's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 30} Appellant contends he was denied the effective assistance of trial counsel because counsel opened the door for the admission of hearsay testimony and waived appellant's right to confront witnesses against him.

## Law

## Ineffective Assistance of Counsel

{¶ 31} To prevail on an ineffective assistance of counsel claim, appellant must show trial counsel's performance fell below an objective standard of reasonable representation and prejudice resulted from counsel's deficient performance.  *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a court cannot second guess trial strategies and it has the benefit of hindsight, there is a strong presumption that appointed counsel acted in a reasonable and competent manner." *State v. Gaston*, 6th Dist. Lucas No. L-06-1183, 2008-Ohio-1856, ¶ 31, citing *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998), and *Strickland* at 689. "Generally, when the action of the appointed counsel amounts to a trial tactic, it cannot later be used in a challenge that the trial counsel rendered ineffective assistance of counsel." *Gaston* at ¶ 31.

{¶ 32} Here, appellant argues his trial counsel was ineffective because "counsel opened the door for the admission of hearsay statements by [the victim]'s neighbors by their questioning" during cross-examination. Appellant takes issue with the specific question: "according to your neighbor [appellant] was on your front porch, but not in the back * * * correct?" The victim responded by stating "the neighbor across the street said he seen (sic) him knocking and trying to open up the side door."

{¶ 33} A review of the record indicates trial counsel's decision to ask the question on cross-examination which prompted the victim's response was within the scope of trial strategy. Since the trial court had ruled during the preceding direct examination of the victim that the victim's statement about what the neighbor told her was admissible, counsel may have tried to mitigate that testimony by emphasizing that the neighbor saw appellant near the front door, as there was no evidence of damage to the victim's front door. The fact that counsel's strategy ultimately was unsuccessful does not mean that

12.

counsel was ineffective. *See State v. Wilkes*, 6th Dist. Lucas No. L-12-1119, 2013-Ohio-2369, ¶ 10. Moreover, given the significant circumstantial evidence of appellant's guilt, appellant cannot establish he was prejudiced by counsel's conduct. Accordingly, we conclude trial counsel was not ineffective.

### Confrontation Clause

{¶ 34} The Sixth Amendment to the United States Constitution, the Confrontation Clause ("the clause"), preserves the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court stated the clause does not allow "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The main method for determining if the clause is involved, is to resolve whether the statement is testimonial or non-testimonial. *State v. Crager*, 116 Ohio St.3d 369, 2007-Ohio-6840, 879 N.E.2d 745, ¶ 41.

{¶ 35} A testimonial statement is in the nature of a solemn declaration or affirmation which is made to establish or to prove a fact, such as ex parte in-court testimony, affidavits, custodial examinations, depositions, confessions or statements which are made under circumstances that would lead a witness to reasonably believe the statements would be available for use at a later trial. *Crawford* at 51-52. However, a "casual remark to an acquaintance" does not "bear testimony" as contemplated by the

13.

clause. *Id.* at 51. Such nontestimonial statements are governed by a state's rules of evidence on hearsay, and are exempted from scrutiny under the clause. *Id.* at 68.

{¶ 36} A reviewing court applies a de novo standard when assessing a claim that a criminal defendant's rights were violated under the clause. *State v. McClain*, 10th Dist. Franklin No. 13AP-347, 2014-Ohio-93, ¶ 16.

{¶ 37} Here, the neighbors' statements about which the victim testified at trial are not comparable to nor do they fall under any of the investigative or prosecutorial categories of the testimonial statements set forth in *Crawford*. Therefore, the neighbors' statements to the victim are nontestimonial, and are exempted from scrutiny under the clause. As such, appellant's right to confront witnesses against him was not violated.

{¶ 38} In light of the foregoing, appellant's second assignment of error is not well-taken.

**Third Assignment of Error**

{¶ 39} Appellant claims the trial court erred in failing to grant his Crim.R. 29 motion. Appellant argues his Crim.R. 29 motion was meritorious because a jury cannot reasonably infer a burglary occurred, despite the television being found in appellant's possession, where there is insufficient evidence to show "other circumstances indicative of guilt." In support, appellant cites to *Methard v. State*, 19 Ohio St. 363 (1869).

14.

**Law**

{¶ 40} Crim.R. 29(A) provides:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.  The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 41} When reviewing a Crim.R. 29 motion, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Id.* at paragraph one of the syllabus.  "It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts." *State v. Thomas*, 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982).  "Thus, in reviewing the legal sufficiency of evidence to support a jury verdict, it is the minds of the jurors rather than a reviewing court which must be convinced." *Id.* at 80.

{¶ 42} In *Methard*, the Supreme Court of Ohio held that possession of stolen goods soon after a theft of those goods does not raise a presumption of law that the

possessor is guilty of the theft. *Id*. at paragraph three of the syllabus. A smokehouse was burglarized, and goods were stolen. The defendant sold the goods the next day, then was caught and charged with theft. The trial court articulated the law on theft for the jury as follows:

> [W]here there has been a larceny of goods, a person found in the possession of the stolen goods recently thereafter is, in law, presumed to have committed the larceny; and if there was a burglary and entry of said smoke-house, in the night season, as charged, and a larceny of goods therein, and the goods stolen, or any part thereof, were found in the possession of the defendant the next day, the law presumes that he not only stole the property, but that he also committed the burglary; and it is for the defendant to show that he came honestly by the goods. *Id.* at 368.

{¶ 43} The Supreme Court took issue with the law as stated by the trial court, and reversed, stating it was "not prepared to say that the facts of burglary, of larceny, and of possession of the stolen goods soon thereafter by the accused, alone raise a *presumption of law* that he is guilty of both the burglary and larceny." *Id*. However, the Supreme Court also stated:

> The facts that a building was burglariously entered, goods stolen therefrom, and the possession by the accused, soon thereafter, of the goods stolen, are competent evidence to go to the jury, and, in connection with other circumstances indicative of guilt, such as giving a false account, or refusing

to give any account, of the manner in which, or the means by which, he came into possession of the stolen goods, they may afford a strong presumption of fact of the guilt of the accused, and warrant the jury in finding him guilty of both the burglary and larceny. (Emphasis omitted.) *Id*.

**{¶ 44}** We note *Methard* was issued in 1869, whereas R.C. 2911.12, which abrogated the common law of *Methard*, was first promulgated in 1974. R.C. 2911.12(A) sets forth the elements of burglary, and states in relevant part:

(A) No person, by force, stealth, or deception, shall * * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

**{¶ 45}** The approach consistently taken by Ohio courts, since the passage of R.C. 2911.12, allows a jury to infer that "a defendant committed theft or burglary where there is both a close temporal proximity between the commission of the crime and the defendant's possession of the stolen items, and the defendant fails to provide a credible explanation for his possession of the stolen items or 'other circumstances indicative of guilt' exist." *State v. Smith*, 6th Dist. Lucas Nos. L-16-1113, L-16-1114, L-16-1115, 2017-Ohio-5762, ¶ 47.

17.

{¶ 46} Here, the state introduced the following evidence at trial: (1) appellant was observed in the snowy alley close to the victim's home carrying a large, flat screen television during the time the victim was away from her home; (2) appellant was seen by police standing by the trunk of a car, before getting into the backseat of the car; (3) when police stopped the car, appellant was making frantic, furtive movements; (4) appellant initially gave the police a false name; (5) police searched the car and found a television in the trunk; (6) the victim identified the television as her property which had been stolen from her home; (7) the victim did not know appellant nor did she give him permission to go into her home and take her television; (8) the door frame and window screen of the victim's home were damaged and the door was ajar; (9) outside of the victim's home was an upside-down bucket underneath the window with the damaged screen; (10) the period of time between when the burglary occurred and appellant was apprehended was less than two hours; (11) appellant was seen in the alley within a house or two of the victim's home; (12) appellant admitted to police that he was homeless; (13) appellant told police he bought the television from some guy walking down the street for $20 and a bag of weed; and (14) appellant was adamant when he told police that the two men in the car with him had nothing to do with the television.

{¶ 47} Construing the evidence in a light most favorable to the prosecution, we find the circumstantial evidence presented by the state was sufficient to establish all of the elements of burglary as set forth in R.C. 2911.12(A)(2). Accordingly, we find no merit in appellant's third assigned error, and it is found not well-taken.

18.

## Fourth Assignment of Error

{¶ 48} Appellant asserts his conviction is against the manifest weight of the evidence. Appellant argues "the evidence establishes at best that [appellant] was in possession of a television which had been taken from a residence in a burglary, near where the burglary occurred at approximately the time the burglary occurred." Appellant relies on the lack of direct evidence placing him at or inside the burglarized premises.

{¶ 49} The standard of review for manifest weight is the same in a criminal case and a civil case, and the function of an appellate court is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 41 (1997). "'A manifest weight of the evidence challenge contests the believability of the evidence presented.'" (Citation omitted.) *State v. Liggins*, 6th Dist. Sandusky No. 16 CAS 32, 2018-Ohio-2431, ¶ 14. Since "[c]ircumstantial evidence and direct evidence inherently possess the same probative value," no distinction should be made between the weight given to circumstantial and direct evidence. *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492.

{¶ 50} When determining whether a conviction is against the manifest weight, we must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving conflicts in the evidence, if the jury "clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

{¶ 51} Here, after thoroughly reviewing the record, we conclude the evidence weighs heavily in support of a burglary conviction. A significant amount of credible, circumstantial evidence placed appellant near the burgled home and in possession of the stolen television. Considering the admissible testimony and evidence presented at trial, we cannot say the jury lost its way or created a manifest miscarriage of justice by convicting appellant. Accordingly, the fourth assignment of error is not well-taken.

{¶ 52} **Conclusion**

{¶ 53} For the foregoing reasons, the April 18, 2017 judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.              _____
                                       JUDGE
James D. Jensen, J.           

Christine E. Mayle, P.J.        _____
CONCUR.                                              JUDGE

_____
                                       JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.