[Cite as *State v. Mills*, 2019-Ohio-706.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   107233

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JOHN MILLS, JR.**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-621007-A

**BEFORE:**  Boyle, J., Kilbane, A.J., and Headen, J.

**RELEASED AND JOURNALIZED:**  February 28, 2019

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, Second Floor
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Nathaniel Tosi
         Anthony Thomas Miranda
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113


MARY J. BOYLE, J.:

**{¶1}**   Defendant-appellant, John Mills, Jr., appeals his burglary conviction and sentence. He raises three assignments of error for our review:

> 1. The state presented insufficient evidence of appellant's guilt.
>
> 2. The manifest weight of evidence did not support a conviction of appellant.
>
> 3. The trial court erred in granting restitution for new security measures for the
>
> victim's home, a recovery not sanctioned under restitutionary law.

**{¶2}**   Finding merit to Mills's third assignment of error, we affirm in part, reverse in part, and remand.

## I. Procedural History and Factual Background

**{¶3}**   On September 13, 2017, the Cuyahoga County Grand Jury indicted Mills for one count of burglary in violation of R.C. 2911.12(A)(2), and one count of petty theft in violation of

R.C. 2913.02(A)(1).   Mills pleaded not guilty, and the case proceeded to a bench trial in March 2018.

{¶4}   The state first called Jeremias Fuentes, the victim, who testified that on August 28, 2017, he was living by himself in the upstairs part of a duplex in Cleveland.   He stated on that day he was off work and that he went to the gym for about an hour.   Fuentes testified that upon returning home, he noticed things missing from his home, including a laptop, Bluetooth speaker, jewelry and a watch, a television, and a book bag.   He testified that the laptop cost him $300, the speaker was $50, the watch was $250, the television was $250, and the book bag was $50.   He never received an estimate for the jewelry.   He stated that he found a window and doors open that were locked and closed when he left for the gym.

{¶5}   Fuentes called the police, and as he waited he spoke with Mills in his driveway and explained what happened.   According to Fuentes, he noticed that Mills had an "aircast boot" on his leg and was holding a drink.   Fuentes stated that Mills asked if the intruder went "through the window or something like that?"   Fuentes said the conversation with Mills was "brief" and that Mills "went on his way" shortly after.

{¶6}   When a police officer arrived approximately two and one-half hours later, Fuentes showed the officer his home and gave a statement.   He stated that as the officer was about to leave, Mills's sister, Marcilla, approached.   Fuentes explained that Marcilla lived next door with her mother and brother.   Marcilla had Fuentes's book bag in hand, which contained his laptop. Fuentes said that the laptop no longer worked and he had to purchase a new hard drive that cost him $150.

{¶7}    Fuentes stated that although the police officer told him that a forensic team would come out to take fingerprints, none did so.   He also said that besides the initial officer, he spoke to a detective over the phone the next day, August 29.

{¶8}    The state next called Marcilla Mills.   Marcilla lived with her mother and two brothers and Mills stayed in the garage.   She testified that when she came home and learned that the neighbor's house was broken into, she "started looking around" areas on her property.   She stated that Mills was sleeping in the garage when she returned home, and when she entered the garage, she found "a book bag that had a laptop in it."   She said that the book bag was covered by a coat.   She said that she immediately took the book bag and laptop over to the neighbor's property and that the police officer was notified.   She testified that after the police officer took Mills into custody, she additionally found the Bluetooth speaker in a bag of chips and a television cord also in the garage.

{¶9}    Marcilla testified that she was not contacted by any law enforcement officials to come out and take any further evidence after Mills was taken into custody and that the only items the police officer took from the garage on August 28, 2017, were Mills's wallet and identification.

{¶10} The state's last witness was Detective James Holt, who was assigned to follow up on the incident at Fuentes's home.   Detective Holt "reviewed the report and the details of the arrest" and spoke with Marcilla, who "confirmed * * * where she recovered [Fuentes's] property."   He also said that he tried contacting Fuentes a number of times and spoke with him to confirm the details of the report.   Detective Holt stated that while the Scientific Investigation Unit ("SIU") was requested to go out and process the scene, there was never a follow-up.   He explained that the SIU does not perform follow-ups when it is unable to contact the victim or when "the scene becomes contaminated and [SIU cannot] do it."   He stated that there were no

attempts to collect DNA or fingerprint evidence from the Fuentes' home. Detective Holt also testified that he interviewed Mills after his arrest and that Mills denied committing the burglary.

{¶11} The state rested, and Mills moved for an acquittal under Crim.R. 29, which the trial court denied. Mills did not call any witnesses and renewed his Crim.R. 29 motion, which the trial court again denied.

{¶12} The trial court found Mills guilty of all charges. The trial court subsequently sentenced Mills to a two-year prison term for burglary, a felony of the second degree, and a 180-day jail term (which Mills already served) for petty theft, a misdemeanor of the first degree. The trial court advised Mills that "postrelease control [was] part of [his] prison sentence for up to three years discretionary" for his felony conviction. The trial court also ordered restitution to the victim in the amount of $623.

{¶13} In October 2018, the trial court issued a nunc pro tunc entry to correct its postrelease control advisement. The journal entry stated that Mills was subject to postrelease control for three years mandatory.

{¶14} It is from this judgment that Mills now appeals.

**II. Law and Analysis**

**A. Sufficiency**

{¶15} In his first assignment of error, Mills argues that there was insufficient evidence to support his burglary conviction. Specifically, he argues that there was insufficient evidence because "(1) mere presence is not enough to show that [he] committed a burglary; and (2) the victim's absence from the home showed that it was objectively unlikely for someone to be present during the burglary."

{¶16} A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis sic.)" *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Thompkins* at 386, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). When reviewing a sufficiency of the evidence claim, we review the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996).

{¶17} R.C. 2911.12(A)(2), which sets forth the elements for burglary under which Mills was convicted, states,

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

1.      **Mere Presence**

{¶18} Mills first argues that the state failed to "present evidence that he took any action that amounted to burglary[.]" He points to the lack of eyewitness, forensic, or photographic evidence and the state's inability to locate the other allegedly stolen items besides the speaker, television cord, book bag, and laptop.

{¶19} Proof of guilt may be made by circumstantial evidence, which "requires the drawing of inferences that are reasonably permitted by the evidence[.]" *State v. Cassano*, 8th Dist.

Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). Further, forensic evidence is not required to uphold a burglary conviction.

> [A] jury [may] infer that "a defendant committed theft or burglary where there is both a close temporal proximity between the commission of the crime and the defendant's possession of the stolen items, and the defendant fails to provide a credible explanation for his possession of the stolen items or 'other circumstances indicative of guilt' exist."

*State v. Stewart*, 6th Dist. Lucas No. L-17-1107, 2018-Ohio-3517, ¶ 45, quoting *State v. Smith*, 6th Dist. Lucas Nos. L-16-1113, L-16-1114, and L-16-1115, 2017-Ohio-5762.

{¶20} Here, Mills was observed by and even spoke to Fuentes within an hour or so of the burglary and some of the stolen items were found in the place where Mills slept and, in fact, within feet of where he was sleeping. Construing the evidence in a light most favorable to the prosecution, we find the circumstantial evidence presented by the state was sufficient to convict Mills of burglary under R.C. 2911.12(A)(2).

**2. Likely to be Present**

{¶21} Mills also argues there was insufficient evidence that someone was "likely to be present" at the time of the burglary, as required by R.C. 2911.12(A)(2). We have explained,

> A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. * * * In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." * * * Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. * * *
>
> *State v. Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, ¶ 40, quoting *State v. Palmer*, 8th Dist. Cuyahoga No. 89957, 2008-Ohio-2937, ¶ 13.

The Ohio Supreme Court has recognized that the state can establish the "likely to be present" element under R.C. 2911.12(A)(2) by showing that the occupants of the dwelling were "in and out on the day in question" and were temporarily absent when the burglary occurred. *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph one of the syllabus. Conversely, Ohio courts have found that "if the occupants of a house are gone for the entire workday, they are not 'likely to be present' during the day." *State v. Miller*, 2d Dist. Clark No. 2006 CA 98, 2007-Ohio-2361, ¶ 16. *See also State v. Meisenhelder*, 8th Dist. Cuyahoga No. 76764, 2000 Ohio App. LEXIS 4745 (Oct. 12, 2000) (where a person individually occupies an apartment and his usual and ordinary work habits take him away from that apartment regularly during certain hours of the day, there is minimal likelihood that a person will be present in the structure) *Id*. at 14, citing *State v. Lockhart*, 115 Ohio App.3d 370, 373, 685 N.E.2d 564 (8th Dist.1996).

*State v. Jones*, 8th Dist. Cuyahoga No. 104233, 2017-Ohio-288, ¶ 20-21.

**{¶22}** In Jones, we found insufficient evidence to show that someone was likely to be present when the defendant broke into the victim's home under R.C. 2911.12(A)(2). We stated that there was no evidence that the victim was likely to return home during the workday and the victim's testimony that he "'sometimes' worked at home" only "established a possibility that he could have been home at the time of the burglary and that the 'mere possibility' [was] insufficient to establish the 'likely to be present' element." (Emphasis sic.) *Id*. at ¶ 25.

**{¶23}** Here, Fuentes testified that he was not working on August 27, 2016, and that he was in and out, only leaving his home to go to the gym for an hour. We find this to be sufficient to establish that someone was "likely to be present" in Fuentes's home during the burglary.

**{¶24}** Accordingly, we overrule Mills's first assignment of error.

**B. Manifest Weight of the Evidence**

**{¶25}** In his second assignment of error, Mills argues that his burglary conviction was against the manifest weight of the evidence because "no person saw [Mills] enter the home, [] another person was implicated[,] [and Mills] could have simply received stolen property." We disagree.

**{¶26}** Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

**{¶27}** When reviewing a manifest weight challenge, an appellate court sits as the "thirteenth juror" and

> review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]

*Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶28}** Further, we must be mindful that questions of weight and credibility are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). This is because "'[t]he demeanor of witnesses, the manner of their responses, and many other factors observable by a jury * * * simply are not available to an appellate court on review.'"

*State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum*, 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990). "[W]hen considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. McNamara*, 8th Dist. Cuyahoga No. 104168, 2016-Ohio-8050, ¶ 36, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999. "The [factfinder] may take note of any inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.'" *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 33, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958. "Therefore, we afford great deference to the factfinder's determination of witness credibility." *McNamara* at ¶ 36, citing *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060. Accordingly, reversing a conviction and ordering a new trial under a manifest weight of the evidence claim should be saved for the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Bridges*, 8th Dist. Cuyahoga No. 100805, 2014-Ohio-4570, ¶ 67, citing *Thompkins*.

{¶29} In support of his argument, Mills argues that the trial court should not have found Marcilla or Fuentes's testimony to be credible due to the "lack of corroborating evidence presented at trial[,]" including "the stolen goods themselves; photos of the goods; photos of the Fuentes'[s] property; photos of entry; photos of the garage; or photos of the current condition of the merchandise." We disagree.

{¶30} The trier of fact in this case, the trial court itself, heard testimony from both Marcilla and Fuentes and found them to be credible. The trial court also heard testimony from Detective Holt regarding the investigative steps he did and did not take regarding the charges

against Mills. Considering the temporal proximity between the time the burglary occurred and the moment when some of the stolen items were found where Mills slept — actually was sleeping — we cannot say that this is the "exceptional case" warranting a reversal based on the manifest weight of the evidence. Accordingly, we overrule Mills's second assignment of error.

### C. Restitution

{¶31} In his third assignment of error, Mills argues that the trial court erred by "issuing restitution for damages not caused by or during the burglary[,]" specifically, for "the new locks on the home as well as an alarm system that was placed in the home after [the burglary]."

{¶32} R.C. 2929.18(A)(1) provides,

Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, * * * and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

{¶33} Thus, prior to imposing restitution, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence. *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990). It is also well settled that there must be a "due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered." *State v. Williams*, 34 Ohio App.3d 33, 34, 516

N.E.2d 1270 (2d Dist.1986). Documentary and/or testimonial evidence must be introduced to demonstrate the victim's economic loss. *State v. Marbury*, 104 Ohio App.3d 179, 181-182, 661 N.E.2d 271 (8th Dist.1995).

{¶34} At sentencing, the state requested $623 in restitution for "the laptop, which was returned broken, new locks on the home, as well as an alarm system that was placed in the home after this incident."

{¶35} In *State v. Plants*, 8th Dist. Cuyahoga No. 101552, 2014-Ohio-5293, this court reversed the trial court's imposition of restitution for a security system the victim installed after the defendant's criminal acts. We said, "the stated reason the victims installed the security system was to deter future crime by [the defendant]. The cost to install, therefore, was a consequential cost and not an economic cost as defined by statute." *Id*. at ¶ 5.

{¶36} Applying *Plants*, we agree with Mills that the trial court erred in imposing restitution for new locks and an alarm system. The state also concedes this point, stating "the addition of a security system after a burglary is not the type of restitution contemplated under R.C. 2929.18(A)(1)."

{¶37} The state nonetheless argues that the value of the items that Fuentes lost due to the burglary was $800, which included $300 for the laptop, $250 for the watch, and $250 for the television, and that the amount of restitution "is reasonable and is reflective of the economic loss suffered by the victim."

{¶38} The indictment in this case only charged Mills for petty theft for the laptop and television. It did not charge him for other items allegedly stolen from Fuentes's home, including the watch, and therefore, the trial court could not order him to pay restitution relating to the watch or other items besides the television and laptop. *See State v. Williams*, 8th Dist. Cuyahoga No.

102080, 2015-Ohio-1957, ¶ 13 ("Because Williams was not charged with and did not plead guilty to the theft of Bascom's daughter's phone, restitution relating to the loss of the phone is inappropriate in this case because it does not qualify as an economic loss caused by the defendant's illegal conduct for which he was convicted."). Accordingly, we sustain Mills's third assignment of error, vacate the trial court's imposition of restitution, and reverse and remand for a new hearing. On remand, pursuant to R.C. 2929.18(A)(1), the trial court is not permitted to consider the victim's installment of a security system or locks that were not broken as a result of the break-in as part of its restitution award.

{¶39} Judgment affirmed in part, reversed in part, and remanded to the lower court for further provisions consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, A.J., and
RAYMOND C. HEADEN, J., CONCUR